AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

Southern DISTRICT OF Florida (Miami)

USA

V.

Samir Handal

## EXHIBIT AND WITNESS LIST

Case Number: 22-CR-20104-BECERRA

| PRESIDING JUDGE | GOVERNMENT'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|
| Magistrate Eduardo Sanchez | Yara Dodin-AUSA | Paul D. Petruzzi -CJA |
| TRIAL DATE (S) | COURT REPORTER | COURTROOM DEPUTY |
| Detention Hearing | | Kayla Allen |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| | A | 9/28/2026 | A | X | 6 pages - Decision of the Commission concerning Samir Handal |
| | B | 9/28/2026 | B | X | 2 pages - U.S. DOJ - Investigation Letter re: Samir Handal |
| | C | 9/28/2026 | C | X | 2 pages - on line messages |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | Witness sworn and testified: S/A Baxter Cohen -FBI |
| | | | | | S/A Dominic Francis - HSI |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Commission de Contrôle des Fichiers de l'O.I.P.C. - INTERPOL
Commission for the Control of INTERPOL's Files
Comisión de Control de los Ficheros de la OIPC-INTERPOL
لجنة الرقابة على محفوظات المنظمة الدولية للشرطة الجنائية (الإنتربول)

*INTERPOL's Independent Authority for the Control and Protection of Personal Data*

# DECISION OF THE COMMISSION

## REQUESTS CHAMBER

**Request concerning Samir HANDAL**

***(Ref. CCF/124/R1268.21)***

**124th session**

**27 to 30 March 2023**

EXHIBIT

A

The Commission for the Control of INTERPOL's Files (the Commission), sitting as the Requests Chamber, composed of:

Teresa McHENRY, Chairperson
Susie ALEGRE,
Mohamed KAMARA,
Michel FORST,
Hamza ES-SAID,

Members,

Having deliberated during its 124th session, on 29 March 2023, delivered the following Decision.

## I. PROCEDURE

1. On 02 December 2021, Mr Samir HANDAL (the Applicant), lodged a request for the deletion of the information concerning him registered in INTERPOL's files. Following the submission of all the required documents in accordance with Rule 30 of the Operating Rules of the Commission, the request was found admissible, and the Commission informed the Applicant thereof on 17 December 2021.

2. During the study of the Applicant's case, the Commission consulted the INTERPOL National Central Bureaus (NCB) of Haiti, the United States, and Türkiye, and the INTERPOL General Secretariat (IPSG) in accordance with Article 34(1) and (2) of the Statute of the Commission, on the arguments set forth in the request.

3. In between its sessions, the Commission considered that the Applicant's claims and arguments raised serious questions concerning the compliance of the data with INTERPOL's rules. Therefore, the Commission decided that access by INTERPOL member countries to these data recorded in INTERPOL's files shall be blocked pending further study of the file.

4. The Commission informed IPSG of this Decision on 07 April 2022, and on 08 April 2022, IPSG blocked access by INTERPOL member countries to the data recorded in INTERPOL's files concerning the Applicant. The Applicant was informed that the data provided by the NCB of Haiti were blocked on 20 April 2022.

5. Both the Applicant and the NCB source of the challenged data were informed of the fact that the Commission would study the case during its 124th session.

6. Further to Article 40(3) of its Statute, the Commission also decided that the circumstances of the present request warranted an extension of the standard time limit to decide on a request for correction established in Article 40(2) of the said Statute.

7. Further to Article 35(3) of the Statute of the Commission, restrictions were applied to certain information in the Decision.

## II. DATA RECORDED IN INTERPOL'S FILES

8. The Applicant, a national of Jordan, is the subject of a Red Notice issued on 14 November 2021, at the request of the NCB of Haiti for *"Association de malfaiteurs,Assassinat, Tentative d'assassinat et vol à mains armées"* on the basis of an arrest warrant issued on 21 September 2021 by "Me. Garry ORELIEN Juge d'Instruction Près le Tribunal de Première Instance de Port-au-Prince, Haiti".

9. The facts of the case state the following: "Pétion-Ville, Pelerin 5 *Haiti Du 6 juillet 2021 au 7 juillet 2021" "Dans la nuit du 06 au 07 juillet 2021, des individus armés ont pénétré le domicile privé du Président de la République d'Haïti, Monsieur Jovenel MOISE, sise à Pèlerin 5. Ils ont tué le Président et blessé sa femme Martine MOISE. Ces individus ont aussi soustrait de la maison, des documents importants et des objets de valeur avant de prendre la fuite. Des investigations menées ont conduit à l'arrestation de plusieurs d'entre eux et l'identification de beaucoup d'autres. Parmi eux figure le nom de SAMIR HANDAL, qui lui aussi a eu le temps de s'échapper. Au cours de l'interrogatoire, le détenu Christian Emmanuel SANON, déclare qu'ils ont été hébergés dans la résidence privée du nommé Samir HANDAL, située à Delmas 60. Il déclare en plus, que ce dernier a participé dans plusieurs réunions visant à éliminer le Président. Le Juge Instructeur, Me. Garry Orelien a émis un mandat d'amener à son encontre et demande à la police de saisir INTERPOL en vue de la demande d'une notice rouge."*

## III. THE APPLICANT'S SUBMISSIONS

10. The Applicant requested the deletion of the data concerning him, contending, in essence, that:

a) the data lack a clear description of criminal involvement;
b) the proceedings lack purpose;
c) the case is of a predominantly political character; and
d) the proceedings do not respect the principles of human rights.

## IV. APPLICABLE LEGAL FRAMEWORK

11. The Commission considers the following applicable legal framework.

11.1. Field of competence of the Commission:
- Article 36 of INTERPOL's Constitution,
- Article 3(1)(a) and Article 33(3) of the Statute of the Commission;

11.2. Clear description of the criminal activities:
- Article 83 (2)(b)(i) of INTERPOL's Rules on the Processing of Data (RPD),

11.3. Purposes of international police cooperation:
- Article 31 of INTERPOL's Constitution,
- Articles 10(1), 12, 35(2)(b), and 82 of the RPD;

11.4. Matters of a political character:
- Article 3 of INTERPOL's Constitution,
- Article 34 of the RPD,
- The INTERPOL General Assembly Resolution ref. AGN/20/RES/11 (1951),
- The INTERPOL Repository of practice on Article 3.

## V. ANALYSIS OF THE CASE

12. Before considering the Applicant's claims, the Commission examined in point A below the impact of restrictions in this case.

### A. Communication of information

***a) Submissions of the Applicant***

13. The Applicant provided the Commission with a copy of the Red Notice issued against him on 14 November 2021 at the request of the NCB of Haiti.

***b) Submissions of the NCB of Haiti (NCB source of the data)***

14. The NCB objected to the disclosure of any additional data to the Applicant.

***c) Findings of the Commission***

15. Article 35(1) of the Statute affirms the principle that "*the information connected with a request shall be accessible to the Applicant and the source of the data, subject to the restrictions, conditions and procedures set out in this article*". Such restrictions shall be motivated by one of the reasons listed in Article 35(3) and properly justified as required by Article 35(4). This Article also requires that the party requesting the restriction must indicate whether some information such as summaries may be provided instead.

16. Restrictions being an exception to the general principle of communication of information, bearing consequences on the rights of the parties, they must be necessary and proportionate to their stated purpose and interpreted strictly. In analyzing the justification of requested restrictions, the Commission tries on the one hand to protect the interests of the parties, while preserving at the same time the essence of an adversarial procedure in order to provide an effective remedy. In doing so, it takes into account, *inter alia*, the general context of the case, the other avenues available to the Applicant to obtain access to the information at the national level, the potential violation of other rules or international obligations, the possible risks for INTERPOL. It also examines whether counter-balancing measures may compensate, up to the extent possible, the interferences with the rights of the parties.

17. The Commission takes into account that the NCB of Haiti opposed disclosure to the Applicant of data it provided but it did not provide any justification for the restriction sought. Therefore, Commission concludes that the NCB did not comply with the requirements of Article 35(3) and (4) of the Commission's Statute. However, it determines that, further to Article 35(4), such improper reasons and justification would not lead to the disclosure of the restricted data concerned without the consent of the NCB.

18. Furthermore, as the Applicant provided the Commission with a copy of the Red Notice, the Commission has not restricted the data already known to the Applicant, and has taken this into consideration in the study of the case.

## B. Clear description of criminal involvement and purpose of the data

***a) Submissions of the Applicant***

19. The Applicant submitted that he did not commit a crime, and there is no evidence against him. Any alleged statements against him were contradicted by the individuals in the presence of their lawyers and in front of a judge or justice of the peace. The Applicant only rented property to Dr Emanuel SANON. Witnesses including Mr Cem SOLAJ in front of a judge and in the presence of his lawyer attested that he did not know the Applicant, and Mr James SOLAGES confirmed before the Hattian Justice of the Peace that the Applicant never participated in any meetings. He denied that he testified that the Applicant was involved, even though the arrest warrant against the Applicant is exclusively based on his alleged testimony. Dr SANON, also in the presence of his lawyer and in front of a judge, testified that the Applicant only rented property to operate as a hospital, and that the Applicant never participated in any meeting, gathering or criminal plan.

20. According to the Applicant, he and his wife have been in the real estate business in Haiti and the United States since 1993, and own several properties and buildings in both countries. They have done business with the American Embassy, the United Nations, and the Haitian government's Ministry of Planification. He has also rented several properties to UN organizations over the years for use in humanitarian relief efforts. He was introduced to Dr SANON through UN contacts, and Dr SANON

represented himself as a medical doctor and pastor who wanted to open several health clinics in Haiti to treat COVID-19 patients. Dr SANON had previously started several public health organizations in Florida, and the Applicant was happy to participate in Dr SANON's humanitarian project. As such, he allowed Dr SANON to use a property near his home to open a clinic in early 2021. Dr SANON was searching for temporary living conditions, and the Applicant let him stay in one of the bedrooms of his residence, which was across the street from his clinic. He had access to the bedroom, living and dining rooms. The rest of the house was locked, without an occupant, and the Applicant did not stay there when he visited Haiti.

21. He also argued that there is a lack of purpose for the Red Notice. Although his location was well established in the United States, and he has been cooperating with American officials, no efforts were taken by the Haitian authorities to request his extradition. Moreover, although he was arrested by the Turkish authorities on 15 November 2021, and his extradition was requested in Türkiye, this was denied due to strong grounds that he would be subjected to ill-treatment. Therefore, there is no further interest for international police cooperation.

***b) Submissions of the NCB of Haiti***

22. The NCB provided a copy of the arrest warrant and relevant law. It explained that the proceedings and arrest warrant are still ongoing and valid. [RESTRICTED]

23. [RESTRICTED]

***c) Information from the NCB of Türkiye***

24. [RESTRICTED]

***d) Information from the NCB of the United States***

25. [RESTRICTED]

***e) Findings of the Commission***

26. Article 83(2)(b)(i) of the RPD requires that *"sufficient judicial data have been provided [...] which shall provide a succinct and clear description of the criminal activities of the wanted person,"* while IPSG standards for the application of the RPD confirm that *"for red notice requests and diffusions seeking the arrest of a person, it is important to provide sufficient facts that link the wanted individual to the charges against him/her."* Moreover, Red Notices must be of interest for the purpose of international police cooperation pursuant to Articles 10(1), 35, and 82 of the RPD, which is intrinsically linked to the requirement, stipulated in Article 12 of the RPD and outlined in paragraphs 11.2 and 11.3 above, to provide sufficient facts linking the wanted individual to the charges against him, as such facts are crucial to facilitate international police cooperation.

27. The Commission also highlights that it is not empowered to conduct an investigation, to weigh evidence, or to make a determination on the merits of a case and that it does not rely on an alternative narrative of innocence provided by an Applicant. In accordance with Article 33 of its Statute, and in order to assess whether the data comply with Articles 12, 35 and 83(2)(b)(i) of the RPD, it rather examines whether the information provided by an NCB includes sufficient information that links the wanted individual to the charges against him, and a clear description of the criminal activities in which he is accused.

28. In the present case, the Commission considers that the Applicant stated that the allegations against him are not properly substantiated, and that there is no evidence that he participated in, or had knowledge of, any criminality, which was proven through witness testimony. Concerning the description of the Applicant's alleged criminal activities, the Commission considers that, although the NCB of Haiti provided some information concerning the criminal scheme, it cannot concretely

discern, in view of the available information, elements which characterize the Applicant's actual involvement, knowledge of, and intention to commit the offence, including specific acts performed by the Applicant.

29. The Commission also takes into account that, according to the information provided, the Turkish authorities refused the Applicant's extradition to Haiti [RESTRICTED] which could question the ongoing purpose of the registration of the data in view of Articles 10(1), 35, and 82 of the RPD.

30. Moreover, despite multiple reminders, no further information was provided by the NCB of Haiti concerning the Applicant's alleged individual criminal involvement in the offence, or concerning the Applicant's allegations that the registration of the data lacks a proper purpose. Therefore, based on the information provided, the Commission cannot find that the Red Notice complies with the requirements of purpose, quality, interest for the international police cooperation, as required by Articles 10, 12, 35, 82, and 83(2)(b)(i) of the RPD.

31. As the Commission can conclusively dispose of the matter in favor of the Applicant on the above basis, it determines that it is not necessary to further examine his other claims.

## FOR THESE REASONS, THE COMMISSION

Decides that the data concerning the Applicant are not compliant with INTERPOL's rules applicable to the processing of personal data, and that they shall be deleted from INTERPOL's files.

Commission for the Control
of INTERPOL's Files

Secretariat to the Commission
for the Control of INTERPOL's Files

**NOT INTENDED FOR PUBLIC DISSEMINATION**

U.S. Department of Justice

United States Attorney
Southern District of Florida

*Sean T. McLaughlin*
*Assistant United States Attorney*
*HIDTA - International Narcotics & Money Laundering Section*
*11200 NW 20th Street, Suite 101*
*Miami, FL 33172*

March 3, 2026

**VIA HAND DELIVERY**

Samir Handal
14275 SW 92 St.
Miami, FL 33186

Dear Mr. Handal:

The Office of the U.S. Attorney for the Southern District of Florida ("this Office") has been asked by the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI") (hereinafter collectively "the investigative agencies") to review certain evidence concerning matters in which you and your activities surrounding Worldwide Investment Development Group ("Worldwide") and Counter Terrorist Unit Federal Academy ("CTU") - and their related entities – have been subjected to investigative scrutiny.

These matters involve, but are not necessarily limited to, the following: conspiracy to provide material support and resources to a conspiracy to kidnap or kill a person outside the United States resulting in death (18 U.S.C. §§ 956 and 2339A(a)); providing material support and resources to a conspiracy to kidnap or kill a person outside the United States resulting in death (18 U.S.C. § 2339A(a)); conspiracy to kill or kidnap a person outside the United States (18 U.S.C. § 956(a)(1); conspiracy to commit an offense against the United States (18 U.S.C. § 371); expedition against a friendly nation (18 U.S.C. § 371), and smuggling goods from the United States (18 U.S.C. §§ 554). Activities of the type set forth above, including associated conspiracy charges, are subject to felony criminal penalties and prosecution in the federal court system by virtue of the above-cited statutes. Accordingly, please be advised that you are considered a target of this criminal investigation.

As the investigation continues, there may be sufficient evidence to seek your indictment for felony offenses. Please be advised that there are certain time limits, which if allowed to pass, may preclude your future ability to fully cooperate before felony criminal charges have been



EXHIBIT
B

brought. Additionally, please be cautioned that should you wish to provide any additional information, or give a further statement, to this Office concerning the activities currently under investigative scrutiny or any other subject or entity, any statement that you make, or have already made, to investigators may be used against you during any future criminal, civil, or administrative proceeding, or for any other purpose.

In light of the above, it is suggested that you may now wish to consult with a criminal defense attorney prior to initiating any further contact with this Office, including agents with the investigative agencies working with this Office. If you cannot afford to hire your own attorney, and meet certain conditions, you may qualify for the appointment of counsel by a federal judge. Whether you exercise this option or hire your own defense attorney, no adverse inference whatsoever will be drawn strictly as a result of your decision to seek the advice of a criminal defense attorney. Should a criminal defense attorney acting upon your behalf wish to contact me, I would be willing to engage in limited discussion with your counsel regarding your status in this investigation, as well the extent, if any, to which you would be willing to cooperate, provide information, and/or enter possible plea bargain negotiations.

In closing, should you elect to retain the services of a criminal defense attorney, please be advised that your attorney may reach me directly at 786-877-3123.

Sincerely,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: ______________________
Sean T. McLaughlin
Assistant U.S. Attorney

< 194 **Laboule 10 Security**
17 online

Richie Mulsch
Heard something earlier that sounded like a bomb will foward to you now 2:10 AM

~Lionel +509 34 24 8470
There were couple explosions at JoMo's house! 2:12 AM

~Jean-Paul +509 37 91 1038
Évitez tout déplacement. 5:13 AM

Valerie Pompee
> ~Jean-Paul +509 37 91 1038
> Évitez tout déplacement.

Merci 5:13 AM

Bcp de rumeurs qui circulent qui ne sont pas bonnes 5:14 AM

~Jean-Paul +509 37 91 1038
> Valerie Pompee
> Bcp de rumeurs qui circulent qui ne sont pas bonnes

Ce ne sont plus des rumeurs 5:15 AM

~Jean Harry Adrien +509 31 37 5050

EXHIBIT
C

194 Laboule 10 Security
17 online

Jul 7, 2021

~Lionel +509 34 24 8470
L What is going on? 1:46 AM

Richie Mulsch
0:05 1:46 AM

Stay alert something is really not right 1:47 AM

~Lionel +509 34 24 8470
Seems in Pèlerin! No? 1:48 AM

L Was in P5! 1:56 AM

Richie Mulsch
I still here gunshots 1:59 AM

Hear 2:00 AM

~Me Erna Beaulieu +509 36 54 9940
M I heard it too. 2:09 AM

Richie Mulsch
Heard something earlier that sounded like a bomb will foward to you now 2:10 AM